**Roger Dale BLACK, Petitioner,**

v.

**Gary LIVESAY, etc., et al.,
Respondents.**

**Civ. A. No. 3:88–0331.**

United States District Court,
M.D. Tennessee.

June 30, 1988.

## MEMORANDUM OPINION, FINDINGS, ORDER, AND CERTIFICATE OF PROBABLE CAUSE

NEESE, Senior District Judge,
Sitting by Designation and Assignment.

The respondent answered, *see* order herein of May 3, 1988. It appearing that no evidentiary hearing is required, the Court makes "such disposition of the petition as justice shall require." Rule 8, Rules —§ 2254 Cases.

Mr. Black was convicted for rebellion with intent to escape. The pertinent historic facts herein, stated by the Court of Criminal Appeals of Tennessee, follow:

> On January 16, 1984, Roger Black, William Black and William Thompson, who were lawfully confined in Guild 5 at the Middle Tennessee Reception Center in Nashville sought to escape therefrom. According to plan, Roger Black used a makeshift key to unlock the door to his cell. Later as Correctional Officer Randall White was making his rounds, the officer was struck on the back of his head and knocked to the floor by Roger Black.

> Officer White * * * resisted the efforts of Black to confiscate his keys and radio and during the ensuing struggle was struck repeatedly about the face and head with a drain pipe and sharpened wedge. After being severely beaten and choked the officer surrendered the keys. Roger Black then unlocked other cell doors and released several convicts including his brother William and co-defendant William Thompson who in turn assisted in subduing the officer, taking control of the guild area and actively participating in the escape attempt.

> Alerted that something was amiss, several correctional officers hastened to Guild 5 where they found cell doors open and several inmates out of their cells. Holes had been beaten in the screen of a window in the laundry room and the window sill was damaged.

> Officer White was found in the shower area. His condition was described by Captain Sanders thusly:

> > I've been in the department for ten years. I've seen officers hurt before. When I saw Officer White, he was covered with blood. I couldn't tell his face. He had blood coming out of his mouth, his eye. I thought the man was dead. It made me sick to see a man in that condition. I didn't think he was going to make it to the hospital.

> [T]he area * * * [was described] as looking like a slaughter pen where "somebody had tried to butcher somebody." * * * [O]fficer White suffered a broken nose and fourteen distinct lacerations to the scalp and face requiring 178 stitches.

*State of Tennessee v. Roger Black, William Black, William Thompson,* in the Court of Criminal Appeals of Tennessee, 745 S.W.2d 302 at pp. 303–304, *permis.app. den.,* Tenn.S.Ct. (1987). This finding is presumed to be correct, 28 U.S.C. § 2254(d), as none of the conditions of sub–§ 's (1)–(8), inclusive thereof, is claimed by the petitioner to have been extant.

## I

■ Mr. Black claims that T.C.A. § 39–5–711, the statute under which he was convicted, is unconstitutional for vagueness of its terms, "openly rebel" and "open violence." "[T]he terms of a penal statute * * * must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties * * *; and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Connally v. General Const.Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127 [1], 70 L.Ed. 322 (1926).

" * * * T.C.A. § 39–5–712 [, *supra,*] is not unconstitutionally vague." *State of Tennessee, v. Roger Black, et al., supra,* at page 304. Tennessee "courts have the final authority to interpret and, where they see fit, to reinterpret that State's legislation." *Garner v. State of Louisiana,* 368 U.S. 157, 169, 82 S.Ct. 248, 254 [5], 7 L.Ed. 2d 207 (1961), quoted in *Brown v. Ohio,* 432 U.S. 161, 167, 97 S.Ct. 2221, 2226 [9], 53 L.Ed.2d 187 (1977).

The judgment of federal courts as to the vagueness or not of a state statute must be made in the light of prior state constructions of the statute. For the purpose of determining whether a state statute is too vague or indefinite to constitute valid legislation, 'we must take the statute as though it read precisely as the highest court of the State had interpreted it.' * * * When a state statute has been construed to forbid identifiable conduct so that 'interpretation by the [state court: as in original] puts these words in the statute as definitely as if it had been so amended by the legislature,' claims of vagueness must be judged in that light." *Wainwright v. Stone,* 414 U.S. 21, 22–23, 94 S.Ct. 190, 192, 38 L.Ed.2d 179 (1973), cited in *Rose v. Locke,* 423 U.S. 48, 51, 96 S.Ct. 243, 245, 46 L.Ed.2d 185 (1975).

So judging this claim of the petitioner, this Court holds that the statute under which the petitioner was convicted is not "so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application," *Connally v. General Const. Co., supra,* 269 U.S. at 391, 46 S.Ct. at 127. Such claim, accordingly, is devoid of merit.

## II

■ Mr. Black claims also that his federal right to due process of law was violated, when his trial Court denied his request that the jury be instructed regarding the definitions of "open," "rebel" and "violence." Such court, in its instructions to the jury, defined the word "rebel" as "to defy or resist authority." With regard to the other 2 words, this Court found, *supra,* that they are easily understandable to people of common intelligence. Therefore, Mr. Black was not prejudiced unfairly by any failure of his trial Court to give the requested instruction. This issue, likewise, has no merit.

## III

■ Mr. Black asserts additionally that an imposition of a sentence of imprisonment for life under T.C.A. § 39–5–712, *supra,* is disproportionate constitutionally to the crime of which he was convicted and constitutes cruel and unusual punishment. "[A] criminal sentence must be proportionate to the crime for which the defendant has been convicted." *Solem v. Helm,* 463 U.S. 277, 290, 103 S.Ct. 3001, 3009[2], 77 L.Ed.2d 637 (1983).

However, "it is not the role of a[ ] [reviewing] court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence; rather, in applying the Eighth Amendment [to the federal Constitution] the [reviewing] court decides only whether the sentence under review is within constitutional limits. In view of the substantial deference that must be accorded legislatures and sentencing courts, a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate." *Id., cf.,* fn. 16.

In the light of the facts herein, this Court will not engage in such an extensive

analysis * in order to determine whether the sentence complained-of is disproportionate constitutionally. The facts show that Mr. Black beat a correctional officer violently with the intent to escape from prison. The testimony at his trial depicted graphically the utter depravity of his actions. The punishing of such conduct by a term of life imprisonment is not disproportionate, and is thus not in violation of the Constitution. This claim, thus, lacks merit.

## IV

■ Mr. Black contends also that he was denied the due process of the law because the attorney prosecuting him failed to provide defense counsel with discovery of a statement the petitioner made to a corrections officer, indicating that the petitioner was seeking only to escape when he had the altercation with the pertinent corrections officer. "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. State of Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–1197[3], 10 L.Ed.2d 215 (1963).

"[I]f the omitted evidence creates a reasonable doubt that did not otherwise exist, constituional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial." *United States v. Agurs,* 427 U.S. 97, 112–113, 96 S.Ct. 2392, 2402[11], 49 L.Ed.2d 342 (1976).

There is no merit to this claim: the aforenamed intermediate appellate Court of Tennessee found that the purported statement of Mr. Black was given orally by him to the aforenamed Captain Sanders and was included by the latter in a written report; that the pertinent assistant district attor-

ney general learned first of such statement at the time he interviewed Captain Sanders pretrial, and that such prosecuting attorney and counsel for Mr. Black agreed that such statement would be suppressed. That Court found furthermore that a copy of this report of Captain Sanders, including such oral statement, was furnished to counsel for Mr. Black at the conclusion of this officer's testimony by such assistant, and that counsel for Mr. Black, in fact, presented this "patently self-serving statement" of Mr. Black before the jury during his cross-examination of Mr. Sanders. *State of Tennessee v. Roger Black, William Black, William Thompson, supra,* at pp. 306–307.

Thus, Mr. Black was prejudiced in no way by any violation of his federal right to due process of the law by any failure initially of the attorneys prosecuting him to allow defense counsel to discover pre-trial such oral statement of Mr. Black. This issue raised by the petitioner, accordingly, is meritless under federal-constitutional law.

## V

■ Mr. Black asserts also that his right to federal due process of law was violated when his prosecuting attorney alluded improperly to his criminality as a juvenile. The Court of Criminal Appeals of Tennessee found factually in that regard as follows:

In the first place the record supports a finding that the defendant opened the door to this line of inquiry when he cross-examined witness Betty Stiddum as follows:

Q. Do your records reflect whether or not Roger Black had ever been in the Tennessee Department of Corrections as an adult before?

A. Not as an adult, no.

When the State took the witness back on re-direct the following occurred:

* When necessary to conduct such an analysis, "a court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Solem v. Helm, supra,* 463 U.S. at 292, 103 S.Ct. at 3011.

Q. Ms. Stiddum, Mr. Grissim asked you the question, "Do your records reflect whether or not Roger Black as an adult offender had ever been in the Department of Corrections before?" Do you recall that question?

A. Yes.

Q. Had he asked you the question, "Had he ever been in the Department of Corrections before," would your answer have been the same?

MR. GRISSIM: Your honor, I object to that.

Upon the defendant's contemporaneous objection the trial court promptly sustained the objection before the witness answered. The trial judge's offer to give the jury a curative instruction was declined by the defendant. However, his general charge to the jury included the following language.

> You must never assume to be true any insinuation suggested by a question asked a witness. The question is not evidence and may be considered only as it supplies meaning to the answer.

Even if the question alluding to the record of Mr. Black's activity as a juvenile may have been misconduct on the part of the prosecuting attorney, such misconduct was not "pronounced and persistent with a probable [consequential] cumulative effect upon the jury." *Berger v. United States,* 295 U.S. 78, 89, 55 S.Ct. 629, 633[7], 79 L.Ed. 1314 (1935). Any such misconduct by such prosecuting attorney was mitigated by the prompt and proper curative instruction of the trial Court, so that this issue is without merit from the standpoint of federal-constitutional due process.

## VI

■ Mr. Black alleges a further infringement of his federal right to the due process of law by his trial Court's admission into evidence of photographs of the scene of the crime and of the victim's clothing, both which involved blood. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." Rule 403, Federal Rules of Evidence; adopted by the Supreme Court of Tennessee in *State v. Banks,* 564 S.W.2d 947, 951 [10–11] (Tenn.1978).

The Tennessee Court of Criminal Appeals found that, while the photographs of the crime scene portray substantial bloodstains on the floor "they are not gruesome or horrifying." The respondent contends such photographs have probative value which outweighs any unfair prejudice against the petitioner, in that they show how and where the crime occurred. This Court agrees.

The respondent claims also that the photographs of the bloody clothing of the victim were also more probative than prejudicial, as they supported the prosecution's theory that Mr. Black intended to kill the correctional officer in his attempt to escape from imprisonment. Although, arguably, the prejudicial effect of these photographs may outweigh their probative value, this Court finds, considering the entire record herein and the fact that Mr. Black was not convicted of rebellion with intent to kill, that he suffered no unfair prejudice as a result of their introduction into evidence. This claim has no merit.

From all the foregoing, it appears that the petitioner Mr. Roger Black, is not incarcerated in violation of his federal constitutional rights, and he hereby is

DENIED all relief. Judgment to that effect will enter. Rule 58(1), F.R.Civ.P.

The petitioner's motion for the appointment of counsel hereby is

DENIED, as now moot.

Should the petitioner give timely notice of an appeal from the judgment to be entered herein, he is authorized to proceed thereon *in forma pauperis.* Rule 24(a), F.R.App.P. Any such notice will be treated also as an application for a certificate of probable-cause, Rule 22(b), F.R.App.P., which WILL issue because of the complexity of the legal issues implicated herein, and

the length of the punishment imposed upon the petitioner.